476 So.2d 172 (1985)
Gregory MILLS, Appellant,
v.
STATE of Florida, Appellee.
No. 59140.
Supreme Court of Florida.
August 30, 1985.
Rehearing Denied October 14, 1985.
*174 James B. Gibson, Public Defender, and James R. Wulchak, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., and Barbara Ann Butler, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
This cause is before the Court on appeal from a judgment of conviction of first-degree murder, burglary, and aggravated battery. The trial court imposed a sentence of death for the first-degree murder, thereby giving this Court jurisdiction of the appeal. Art. V, § 3(b)(1), Fla. Const.
The evidence at the trial showed that Gregory Mills and his accomplice Vincent Ashley broke into the home of James and Margaret Wright in Sanford between two and three o'clock in the morning, intending to find something to steal. When James Wright woke up and left his bedroom to investigate, Mills shot him with a shotgun. Margaret Wright awakened in time to see one of the intruders run across her front yard to a bicycle lying under a tree. Mr. Wright died from loss of blood caused by multiple shotgun pellet wounds.
Ashley, seen riding his bicycle a few blocks from the Wright home, was stopped and detained by an officer on his way to the crime scene. Another officer saw a bicycle at the entrance to a nearby hospital emergency room, found Mills inside, and arrested him. At police headquarters officers questioned both men and conducted gunshot residue tests on them. They were then released.
At trial Mills' roommate testified that he and his girlfriend hid some shotgun shells that Mills had given them, that Mills had been carrying a firearm when he left the house the night of the murder, and that Mills had said he had shot someone. He also stated that Mills told him that a city worker had found a shotgun later shown to have fired an expended shell found near the victim's home.
After the murder, Ashley was arrested on some unrelated charges. He then *175 learned that Mills had told his roommate and his girlfriend about the murder and that they in turn had told the police, so he decided to tell the police about the incident. Ashley testified that Mills entered the house (through a window) first, that he, Ashley, then handed the shotgun in to him, and that he then entered the house himself. Ashley saw that the man in the house had awakened and was getting up, so he exited the house and ran to his bicycle. Then he heard the shot and ran back to the house, where he saw Mills. They both departed the scene on their bicycles, taking separate routes. Ashley was granted immunity from prosecution for these crimes and also for several unrelated charges pending against him at the time he decided to confess and cooperate.
Mills testified in his defense. He said that he arrived home from work on May 24 at about 9:30 p.m. Then he went out, first to one bar, then another, playing pool and socializing. He went home afterwards but could not sleep, he said, because of a toothache and a headache, so he went to the hospital emergency room. There police officers took him into custody.
On appeal Mills raises a number of legal points, several of which we shall discuss. He argues that his conviction is not supported by the evidence; that he was denied effective assistance of counsel by the fact that his counsel, the public defender's office, also represented Ashley at the outset of the case; that his right to confront witnesses was abridged when the court disallowed impeachment of Ashley by statements he had made to a public defender's investigator; that the gunshot residue test results should not have been admitted into evidence; that his conviction for aggravated battery was improper because under the facts of the case aggravated battery was a lesser included offense of the murder; and that his conviction of both murder and burglary was improper because the murder conviction was based on a felony-murder theory with burglary being the underlying felony.

A. Homicide Conviction

Sufficient evidence supports the verdict that Mills committed the murder. It was within the province of the jury to believe Ashley, who was at the scene, and Mills' roommate, to whom Mills made an admission of guilt. Moreover, a significant amount of corroboration, including expert firearms examination evidence, existed. The specific argument Mills makes, however, is that the trial court should have granted him a new trial on the ground that the verdicts were against the weight of the evidence. This argument is without merit.
With regard to his conflict-of-interest argument, Mills relies on Foster v. State, 387 So.2d 344 (Fla. 1980), in which we held the defendant's sixth amendment right had been violated where defense counsel also represented an accomplice who testified at the trial. The present case is entirely different. Here, the public defender represented Ashley in connection with unrelated charges. As soon as Ashley's involvement in the crimes of which Mills was suspected became evident, the public defender withdrew from representation of Ashley because of the possibility of a conflict of interest. Therefore, Mills' contention of ineffective assistance of counsel is without merit.
Mills argues that the court abridged his right to cross-examine the witnesses against him by refusing to allow the defense to impeach Ashley with statements he had made to a public defender's investigator. When the defense attempted to impeach by using the statements, the state objected, Ashley's own attorney was summoned, and on advice of counsel Ashley invoked the attorney-client privilege. Mills contends this violated his sixth amendment cross-examination right, relying on Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
In Davis a statute requiring confidentiality in juvenile delinquency records prevented the defendant from bringing out the juvenile record and probationary status of a key state's witness for the purpose of showing possible bias. The Supreme Court *176 held the sixth amendment had been violated and reversed the conviction. The Court reasoned that the right to confront an adverse witness outweighed the state's interest in preserving the confidentiality of adjudications of juvenile delinquency.
Davis does not require the result for which Mills argues. The Court here did not hold that the right to cross-examination always outweighs considerations of confidentiality. Id. at 321, 94 S.Ct. at 1112 (Stewart, J., concurring); see Note, Defendant v. Witness: Measuring Confrontation and Compulsory Process Rights Against Statutory Communications Privileges, 30 Stan.L.Rev. 935 (1978). Moreover, the attorney-client privilege is of broader and deeper significance than a statute relating to the confidentiality of juvenile records. The attorney-client privilege preserves the confidentiality of private communications. The privilege in question in Davis, on the other hand, was based on a policy, enacted as a statute, in favor of confidentiality for certain officially recorded adjudications. The attorney-client privilege arises in the context of a relationship having great significance for the protection of fundamental personal rights. For example, the ability to speak freely to one's attorney helps to preserve rights protected by the fifth amendment privilege against self-incrimination and the sixth amendment right to legal representation. See Note, The Attorney-Client Privilege; Fixed Rules, Balancing, and Constitutional Entitlement, 91 Harv. L.Rev. 464 (1977). Therefore, the attorney-Client privilege weighs much more heavily against a defendant's cross-examination right than did the statutory exclusion at issue in Davis.
Furthermore, this case does not involve a total preclusion of the opportunity to show possible bias on the part of the witnesses as Davis did. Here the disallowed impeachment was an attempt to bring out a prior inconsistent statement Ashley made to his former counsel's investigator. However, Mills' counsel was able to confront Ashley with several prior inconsistent statements he made to police officers. Defense counsel also cross-examined Ashley about the bargain he made with the authorities whereby Ashley gained immunity not only for the crimes Mills now stands convicted of but also other, unrelated crimes. We therefore hold that the court did not abridge Mills' right to confront the witnesses against him.
Over defense objection the state presented evidence on rebuttal of the gunshot residue tests that had been performed on Mills and Ashley the morning of the murder. The tests were performed about two hours after the estimated time of the shooting, by which time, according to the state's expert, approximately 99% of the residues the test detects would have been dissipated. Ashley's test result was negative. Mills' test was positive in that it revealed the presence of antimony in an amount not to be expected on a person who had not fired a gun, although it was not enough to prove conclusively that he had done so.
Mills contends that the gunshot residue test results should not have been admitted into evidence because such tests are not scientifically accepted in general and because the tests used in this case were inconclusive and unreliable. The test in question was a neutron activation analysis which is designed to detect and measure the presence of barium and antimony on the subject's hands. Barium and antimony are rare chemical elements which are released in a cloud when a firearm is discharged. The test has attained sufficient standing among scientists to be accepted as reliable evidence in the courts. Chatom v. State, 348 So.2d 838 (Ala. 1977). A majority of American jurisdictions has held the results of such tests to be admissible evidence in criminal proceedings. E.g., Keith v. State, 612 P.2d 977 (Alaska 1980); State v. Warden, 100 Idaho 21, 592 P.2d 836 (1979); State v. Ulrich, 187 Mont. 347, 609 P.2d 1218 (1980); State v. Journey, 201 Neb. 607, 271 N.W.2d 320 (1978); Commonwealth v. Sangricco, 475 Pa. 179, 379 A.2d 1342 (1977).
The neutron activation analysis does not conclusively establish whether the *177 subject has recently fired a gun. The test result is admissible in evidence despite this inherent inconclusiveness. State v. Spencer, 298 Minn. 456, 216 N.W.2d 131 (1974). It is relevant because it shows a probability that the subject did or did not fire a gun, and its probative value is for the jury to determine. Therefore, Mills' contention is without merit.

B. Other Convictions and Sentences

1. Aggravated Battery
Mills also claims that his conviction of aggravated battery is invalid because aggravated battery is a lesser included offense of first-degree murder. This Court has recently visited the subject of lesser included offenses in such cases as State v. Enmund, 476 So.2d 165 (Fla. 1985), State v. Baker, 456 So.2d 419 (Fla. 1984), and State v. Gibson, 452 So.2d 553 (Fla. 1984). After analyzing the pertinent statutes, we disagree with Mills' claim.
Mills' indictment charged him with one count of felony murder (subsection 782.04(1), Florida Statutes (1979)), one count of burglary while armed with a firearm (subsections 810.02(1), 810.02(2)(a), 810.02(2)(b), Florida Statutes (1979)), and one count of aggravated battery with a firearm (subsection 784.045(1)(b), Florida Statutes (1979)). The elements of felony murder are (1) the unlawful killing of (2) a human being by (3) a person engaged in the perpetration of, or in the attempt to perpetrate, (4) a specified felony. The elements of the aggravated battery charged against Mills, on the other hand, are (1) use of a deadly weapon (2) during commission of a battery. It is possible to commit each of these crimes without committing the other, and each contains elements which the other does not. Baker. Aggravated battery is, therefore, not a lesser included offense of felony murder. Even so, we do not believe it proper to convict a person for aggravated battery and simultaneously for homicide as a result of one shotgun blast. In this limited context the felonious conduct merged into one criminal act. We do not believe that the legislature intended dual convictions for both homicide and the lethal act that caused the homicide without causing additional injury to another person or property. Hence we vacate the sentence and conviction for aggravated battery.

2. Burglary
The state charged Mills with and the jury convicted him of first-degree felony murder with burglary being the underlying felony. In State v. Enmund, 476 So.2d 165 (Fla. 1985), we held that the underlying felony is not a necessarily lesser included offense of felony murder. See Baker; Bell v. State, 437 So.2d 1057 (Fla. 1983). We therefore affirm both the conviction of and sentence for burglary.

C. Death Sentence

We come now to consideration of the sentencing phase of the trial and the sentence of death imposed on Mills. His counsel dutifully challenges the constitutionality of Florida's capital felony sentencing law, but the arguments raised have previously been resolved against Mills in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
After the presentation of evidence and argument at the sentencing hearing, the jury recommended a sentence of life imprisonment. The court ordered and considered a presentence investigation. After receipt and disclosure of the presentence investigation, the court heard further presentations from the parties regarding the appropriate sentence.
The court declined to follow the recommendation of the jury and sentenced Mills to death, finding the existence of six aggravating circumstances: 1) under sentence of imprisonment; 2) previous conviction of violent felony; 3) great risk of death to many persons; 4) felony murder; 5) pecuniary gain; and 6) heinous, atrocious, or cruel. The court found that no mitigating circumstances had been established. Mills now claims that the court found improper aggravating circumstances, failed to consider certain mitigating evidence, and failed to *178 give appropriate consideration to the jury's recommendation of life imprisonment.
Because Mills was on parole at the time of the crime, the finding that he was under sentence of imprisonment was appropriate. Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). Also, documentary evidence demonstrated Mills' previous conviction of aggravated assault, a felony involving the use or threat of violence to the person. The finding that Mills knowingly created a great risk of death to many persons was, as the state concedes, erroneous. Kampff v. State, 371 So.2d 1007 (Fla. 1979).
Mills argues that the factor of the murder having been committed in the course of a burglary should not have been considered in his case since it was submitted to the jury on the theory of felony murder. He contends that to submit this aggravating circumstance to the jury in a felony-murder case renders a finding of aggravation automatic. This, he argues, violates eighth amendment principles of proportionality because under this practice a person found guilty of felony murder is more likely to receive a death sentence than a person found guilty of premeditated murder. See State v. Oliver, 302 N.C. 28, 274 S.E.2d 183 (1981); State v. Cherry, 298 N.C. 86, 257 S.E.2d 551 (1979), cert. denied, 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980). This contention is without merit. The legislative determination that a first-degree murder that occurs in the course of another dangerous felony is an aggravated capital felony is reasonable. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
However, the court erred in finding as a separate aggravating circumstance that the capital felony was committed for pecuniary gain. The aggravating factors that the capital felony was committed in the course of a burglary and that it was committed for pecuniary gain are in this situation both based on the same aspect of the criminal episode and should therefore have been considered as a single aggravating circumstance. Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981); Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977).
Mills also argues that the court erred in finding that the capital felony was especially heinous, atrocious, or cruel. He asserts there was no infliction of excessive physical or mental suffering. In making an analysis whether the homicide was especially heinous, atrocious and cruel, we must of necessity look to the act itself that brought about the death. It is part of the analysis mandated by section 921.141(1), Florida Statutes which provides for a separate proceeding on the issue of the penalty to be enforced and "evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant." In this case the death instrumentality was a .410 shotgun fired at close range. Whether death is immediate or whether the victim lingers and suffers is pure fortuity. The intent and method employed by the wrongdoers is what needs to be examined. The same factual situation was presented in Teffeteller v. State, 439 So.2d 840 where this Court set aside the trial court's finding that the murder was heinous, atrocious and cruel.
The criminal act that ultimately caused death was a single sudden shot from a shotgun. The fact that the victim lived for a couple of hours in undoubted pain and knew that he was facing imminent death, horrible as this prospect may have been, does not set this senseless murder apart from the norm of capital felonies.
We cannot reconcile the Court's decision in Teffeteller with the present one. Thus the finding of especially heinous, atrocious or cruel must fall.
With regard to mitigating circumstances, Mills argues that the court erred in not finding that he had no significant history of prior criminal activity. The *179 judge relied on a presentence investigation showing that Mills had over thirty arrests and that he had been incarcerated numerous times. Thus, the evidence negated this statutory mitigating circumstance.
Mills also claims that the trial court erred by failing to recognize his youthful age as a statutory mitigating circumstance. This contention is without merit. Mills was twenty-two at the time of the crime. In Peek v. State, 395 So.2d at 498, we said:
There is no per se rule which pinpoints a particular age as an automatic factor in mitigation. The propriety of a finding with respect to this circumstance depends upon the evidence adduced at trial and at the sentencing hearing.
Therefore, the trial court was not required to find a mitigating circumstance based on youth.
We conclude that the court's finding that there were no mitigating circumstances was correct. Because there were no mitigating circumstances, we find that the court's erroneous finding of two statutory aggravating circumstances was harmless and did not impair the sentencing process.
Mills contends that the court erred in sentencing him to death after receiving the jury's recommendation that he be sentenced to life imprisonment. A jury's recommendation of life should be accorded great weight, and should be followed unless the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ. See Tedder v. State, 322 So.2d 908 (Fla. 1975).
We hold that the trial judge's findings in support of the sentence of death even without the finding of especially heinous, atrocious and cruel, meet the Tedder standard. We find that the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ. There are three valid statutory aggravating circumstances, and the trial judge has found that there are no valid mitigating circumstances. The purported mitigating circumstances claimed by Mills, but not found by the trial judge, are not sufficient to outweigh the aggravating circumstances nor do they establish a reasonable basis for the jury's recommendation. We conclude that the imposition of a sentence of death after a jury recommendation of life was proper in this case.
Mills' convictions and sentences of death and for burglary are affirmed; the conviction and sentence for aggravated battery is vacated.
It is so ordered.
AS TO CONVICTION:
ALDERMAN, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., concurs with an opinion, in which ADKINS and ALDERMAN, JJ., concur.
OVERTON and McDONALD, JJ., concur with opinions.
ADKINS, J., concurs in result only. AS TO SENTENCE:
ALDERMAN, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., concurs with an opinion, in which ADKINS and ALDERMAN, JJ., concur.
OVERTON and McDONALD, JJ., dissent with opinions.
ADKINS, J., concurs in result only.
BOYD, Chief Justice, concurring.
I concur with the conviction and death sentence. I further would hold that the trial judge was correct in finding this homicide especially heinous, atrocious and cruel. Mills entered the victim's home in the middle of the night. The victim was awakened by strange sounds to find an intruder in his home. Unlike the victim in Maggard v. State, Mr. Wright was aware that he had been shot and did not die quickly. His death from the.410 shotgun blast fired at close range was slow and painful. The *180 medical examiner testified that the cause of death was loss of blood. The victim's pain and suffering in conjunction with the crimes being committed in the victim's home in the middle of the night set this crime apart from the norm of capital felonies. See Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).
ADKINS and ALDERMAN, JJ., concur.
OVERTON, Justice, concurring in part, dissenting in part.
I concur with the conviction of first-degree murder. I find aggravated battery to be a lesser offense of first-degree murder and concur that the legislature did not intend dual convictions for the same lethal act.
I dissent from the holding that the underlying felony is not a lesser included offense of first-degree felony murder. I also dissent from the imposition of the death penalty, finding the jury recommendation of life should have been followed for the reasons expressed by Justice McDONALD in his dissent.
McDONALD, Justice, concurring in part/dissenting in part.
I dissent only from the affirmance of the death sentence. Were it not for the jury's recommendation, I would have little difficulty in upholding the death sentence. Valid aggravating circumstances existed, and the defense established the existence of no statutory mitigating circumstances.
The jury, however, recommended life imprisonment. In such instances we have stated that "the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). We should, therefore, review Mills' sentence in light of Tedder.
The jury's recommendation must have been predicated on the circumstances of this homicide and on nonstatutory mitigating evidence. The chief testimony against Mills came from Ashley. As previously indicated, Ashley received immunity from prosecution for this crime and other crimes in exchange for his testimony. Ashley said that Mills did the killing, but Mills has always denied this. The jury could have found the evidence sufficient to convict but still have had doubts about whether Mills intended to kill the victim. It could also have concluded that Mills and Ashley were being treated so disparately when their involvement was substantially the same that any such doubt should be weighed in Mills' favor. Mills was employed at the time of the crime and his employer thought well of him. Mills had a harsh and deprived youth, but his grandmother and sister were supportive of him. During prior incarceration he completed studies to the extent that he passed his G.E.D. tests.
Are these circumstances, considered collectively, adequate to find that reasonable persons could recommend life imprisonment? I think so. As previously indicated, adequate and reasonable grounds existed for the trial judge to impose death. For the death penalty to prevail when there is a jury recommendation of life, however, more than a disagreement with a jury's recommendation must be shown. "[T]he facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Id. This is a difficult test, and it has not been met in this case.