507 So.2d 638 (1987)
Stanley James BARTON, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1179.
District Court of Appeal of Florida, Fifth District.
April 10, 1987.
Rehearing Denied May 20, 1987.
*639 James B. Gibson, Public Defender, and Kenneth Witts, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and W. Brian Bayly, Asst. Atty. Gen., Daytona Beach, for appellee.
EN BANC[1]
PER CURIAM.
Stanley Barton was convicted of attempted manslaughter, aggravated battery, and the use of a weapon while committing a felony for the act of cutting his victim across the neck with a single swipe of a hawk-billed knife.[2] Barton appeals, contending that dual convictions for attempted manslaughter and aggravated battery violate his constitutional protection against double jeopardy. The weapon conviction is not on appeal. While we agree with appellant's contention that both the attempted manslaughter conviction and the aggravated battery conviction cannot stand, we do not adopt his reasoning. We can understand his confusion, however, in light of the instability in this area of law created by the Florida Supreme Court's conflicting and, at times, baffling pronouncements.
In Mills v. State, 476 So.2d 172 (Fla. 1985), cert. denied, ___ U.S. ___, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986), the defendant was charged, inter alia, with first-degree murder and aggravated battery, arising out of the shotgun slaying of a burglary victim. Mills claimed that his aggravated battery conviction was invalid since it was a lesser-included offense of first-degree murder. The supreme court, applying its decision in State v. Baker, 456 So.2d 419 (Fla. 1984), disagreed, finding that each crime contained elements that the other did not. However, the supreme court, apparently lapsing into a single transaction analysis, found that two convictions were still improper, noting:
Even so, we do not believe it proper to convict a person for aggravated battery and simultaneously for homicide as a result of one shotgun blast. In this limited context the felonious conduct merged into one criminal act. We do not believe that the legislature intended dual convictions for both homicide and the lethal act that caused the homicide without causing additional injury to another person or property. Hence we vacate the sentence and conviction for aggravated battery.
476 So.2d at 177.
Curiously, the supreme court had issued State v. Snowden, 476 So.2d 191 (Fla. 1985), the day before Mills, noting in the opinion the passage of the amendment to section 775.021(4), Florida Statutes (1983), which incorporated the Blockburger[3] test:
This section now clearly expresses legislative intent that there be separate convictions and sentences for separate criminal *640 offenses "if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial."
476 So.2d at 191. See also Vause v. State, 476 So.2d 141 (Fla. 1985), Shaw, J., concurring.
Thus, within a span of one day, the supreme court issued Snowden, which states that the legislative intent as to multiple punishments is found in section 775.021(4), applying the strict Blockburger test, and Mills, which relies on a general theory of legislative intent, with a result contrary to the Blockburger test, as a basis for support. To add to this confusion even more, the supreme court issued its initial opinion in State v. Boivin, 10 FLW 466 (Fla. Aug. 29, 1985), on the same day as Snowden. Boivin was convicted of aggravated battery and attempted first-degree murder. The court applied a strict Blockburger test via Baker, found that the elements were different, and affirmed both convictions. After rehearing, the supreme court issued its final opinion, State v. Boivin, 487 So.2d 1037 (Fla. 1986), reciting its previous opinion, but then, reverting once more to a single transaction analysis, added the following:
We find, however, no legislative intent or recognition that society needs multiple punishments for both aggravated battery and attempted first-degree murder where both the attempted murder and the aggravated battery caused no additional injury to another person or property. Mills v. State, 476 So.2d 172 (Fla. 1985). We therefore approve the district court's reversal of Boivin's conviction of and sentence for aggravated battery. We quash the reversal of his conviction of and sentence for possession of a firearm, however, and remand for affirmance of that conviction and sentence.
487 So.2d at 1038. The court approved the reversal of the aggravated battery conviction, while upholding the attempted first-degree murder charge. No mention is made in Boivin of legislative intent pursuant to section 775.021(4).
Under Boivin, we would utilize a single transaction analysis in this case and make an ad hoc determination of legislative intent pursuant to Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). However, The Florida Supreme Court has effectively rejected the Boivin rationale in State v. Rodriquez, 500 So.2d 120 (Fla. 1986). There, the court held that the "legislative intent" referred to in Missouri v. Hunter is to be determined in Florida pursuant to section 775.021(4)  i.e., in accordance with the Blockburger test rather than on the basis of an ad hoc visceral search for legislative intent. Since the crimes involved in Rodriquez (robbery and grand theft) were held to include different elements, the court found a legislative intent to uphold separate convictions.
Thus, Rodriquez marks a return to the supreme court's initial opinion in Boivin, and to its footnote in Snowden, which requires legislative intent to be established via section 775.021(4) and the Blockburger test. This holding overrules the expressed reasoning in both Boivin and Mills. Neither case is mentioned in Rodriquez. Under a double jeopardy analysis, and following Rodriquez, it would at first appear the two convictions contested here would be affirmed. However, the instant case does not truly involve double jeopardy, but, rather, mutually exclusive convictions.
There is no need to enact a separate criminal statute defining a separate criminal offense (or defining some specific degree of some substantive criminal offense) in order to merely provide for increased punishment for an act which is already punishable under another criminal statute. It therefore follows that when the legislature does enact a separate criminal statute it intends for that statute to relate to conduct not already prohibited and punishable under some other statute. It also logically follows that the legislature does not intend that one and the same simple act (or degrees of the same substantive act) be punished twice under two or more separate criminal statutes. This construction of legislative intent is expressed in section 775.021(4), Florida Statutes, and is in accord *641 with the established rule of statutory construction that penal statutes are to be construed most favorably to the accused, which latter principle is recognized by judicial precedent and expressly by the legislature in section 775.021(1), Florida Statutes. This construction of legislative intent is also in harmony with the mutually exclusive character of separate criminal statutes (and of mere degrees of one substantive offense). Perhaps most importantly, this construction of legislative intent as to the relationship between separate criminal statutes avoids the constitutional double jeopardy identity of offense problems involved when multiple criminal statutes are applied to a single factual event which is the concern of so many recent cases, including those cited above.
Taylor v. State, 444 So.2d 931 (Fla. 1983), held that an intent to kill is a prerequisite for conviction of assault with intent to commit manslaughter pursuant to Williams v. State, 41 Fla. 295, 26 So. 184 (1899). Adopting the Williams rationale, Taylor held that the crime of attempted manslaughter exists in situations where, if death resulted from an act of the defendant, the defendant would be guilty of voluntary (i.e., intentional) manslaughter at common law. Voluntary manslaughter at common law (as to which there can be an attempt) has been statutorily enacted in Florida as "the killing of a human being by the act (or) procurement ... of another, without lawful justification." § 782.07, Fla. Stat. (1985). The words "act" and "procurement" obviously refer to acts evidencing an intent to kill, as required at common law for voluntary manslaughter. Involuntary (i.e., negligent) manslaughter at common law has been statutorily enacted in Florida as a killing caused by "culpable negligence" (see § 782.07, Fla. Stat. (1985))  and there is no such crime as "attempted manslaughter by culpable negligence." Taylor at 934.
The instant case, then, turns on Barton's intent. If, when he committed his single act of cutting his victim, he had the specific intent to kill (whether premeditated or otherwise), the defendant was guilty of attempted murder or attempted manslaughter and there was no aggravated battery. This is so because any intent to kill negates an implied element of aggravated battery (the absence of an intent to kill). The converse is also true: If Barton had no intent to kill, then he could not be guilty of any attempted homicide. Thus, attempted manslaughter and aggravated battery are mutually exclusive crimes.
Our determination that the crimes of attempted manslaughter and aggravated battery are mutually exclusive is supported by a reading of section 784.03, Florida Statutes (1985), which defines the crime of battery as follows:

Battery. 
(1) A person commits battery if he:
(a) Actually and intentionally touches or strikes another person against the will of the other; or
(b) Intentionally causes bodily harm to an individual;
(2) Whoever commits battery shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
It is clear that under the statute the harm contemplated involves "bodily harm," or injury, a result which does not encompass death.[4] This result is consistent with common law definitions. See Lindsey v. State, 53 Fla. 56, 43 So. 87 (1907) (mutually exclusive intent seen in assault and attempted murder). This determination has also been implicitly adopted by the supreme court in its determination that the jury need not be instructed on any charge less than one *642 causing death in a homicide trial. See Martin v. State, 342 So.2d 501 (Fla. 1977).
Without expressly recognizing it, the Florida Supreme Court utilized a "mutually exclusive" analysis in Boivin when it determined that convictions for both attempted first-degree murder and aggravated battery could not be upheld. While the opinion is couched in terms of double jeopardy and "legislative intent," what the court truly determined was that the crimes were mutually exclusive and therefore the defendant could not be convicted of both. This principle of law is not new to Florida, and an analysis of its leads to a resolution of the present case.
Initially, it was held in Florida that verdicts on different counts where the finding on one necessarily includes a finding that an essential element in the other does not exist must be set aside. See Gordon v. State, 97 Fla. 806, 122 So. 218 (1929); Bargesser v. State, 95 Fla. 404, 116 So. 12 (1928). The rule relating to inconsistency as between multiple guilty verdicts is set forth in 18 A.L.R.3d 259 at 283:
The general rule dispensing with the necessity for consistency as between the acquittals and guilty verdicts under a multicount indictment or information is not ordinarily applied where the jury returns multiple convictions as to crimes which are mutually exclusive of each other. (Footnote omitted.)
Three Florida cases are cited in support of this proposition: Bargesser, Gordon and Allison v. Mayo, 158 Fla. 700, 29 So.2d 750 (1947).
In Allison, the defendant was convicted by general verdict for simultaneously (1) breaking and entering, and (2) entering without breaking. These verdicts were inconsistent and repugnant. The Florida Supreme Court upheld the defendant's argument, presented by habeas corpus petition, that under these circumstances only the sentence (and presumably the conviction) for the lesser crime could stand. Allison modified Gordon and Bargesser, under which both convictions would have been reversed.[5]
In the instant case, the question is which (if either) inconsistent verdict  attempted manslaughter or aggravated battery  can be sustained when each appears to negate the other. Pursuant to Allison, we must affirm the conviction based upon the lesser verdict (attempted manslaughter  a third-degree felony) and reverse the conviction based upon the higher verdict (aggravated battery  a second-degree felony). This selection process should not be confused with that which we would utilize for repetitive convictions for the same offense. See, e.g., Foster v. State, 286 So.2d 549 (Fla. 1973); Young v. State, 506 So.2d 13 (Fla. 5th DCA 1987).
Accordingly, we affirm the appellant's conviction for attempted manslaughter, reverse the conviction for aggravated battery, and remand for resentencing.
AFFIRMED in part; REVERSED in part; and REMANDED.
UPCHURCH, C.J., and DAUKSCH, ORFINGER, COBB, SHARP and COWART, JJ., concur.
NOTES
[1] This cause was considered en banc pursuant to Florida Rule of Appellate Procedure 9.331, in order to maintain uniformity in this court's decisions and, also, based on our determination that this cause presents a question of great public importance.
[2] The attempted manslaughter conviction resulted from a jury verdict on the charged crime of attempted first-degree murder.
[3] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[4] Aggravated battery, which is the crime charged in this case, is provided for in section 784.045, Florida Statutes (1985), as follows:

Aggravated battery. 
(1) A person commits aggravated battery who, in committing battery:
(a) Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
(b) Uses a deadly weapon.
(2) Whoever commits aggravated battery shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[5] See also Redondo v. State, 403 So.2d 954 (Fla. 1981), and Mahaun v. State, 377 So.2d 1158 (Fla. 1979), wherein convictions of a lesser crime operated as acquittals of a greater, and the greater was an essential element of a conviction under another count.