603 So.2d 482 (1992)
Gregory MILLS, Appellant,
v.
STATE of Florida, Appellee.
No. 77367.
Supreme Court of Florida.
June 4, 1992.
Rehearing Denied September 17, 1992.
*483 Larry Helm Spalding, Capital Collateral Representative, Gail E. Anderson, Asst. CCR and Todd G. Scher, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Gregory Mills, a prisoner on death row, appeals the trial court's denial of his motion for postconviction relief. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.; Fla.R.Crim.P. 3.850. We affirm the trial court's order.
A jury convicted Mills of first-degree murder for killing an elderly man during a residential burglary and recommended that he be sentenced to life imprisonment. The trial court overrode that recommendation and imposed a death sentence, and this Court affirmed Mills' conviction and sentence. Mills v. State, 476 So.2d 172 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). After the signing of his death warrant, Mills filed a motion for postconviction relief with the trial court and a petition for writ of habeas corpus with this Court. We denied the habeas petition, but reversed the trial court's summary denial of the 3.850 motion and directed that court to hold an evidentiary hearing on the claim that trial counsel rendered ineffective assistance by failing to develop and present evidence regarding statutory and nonstatutory mental health mitigators. Mills v. Dugger, 559 So.2d 578 (Fla. 1990).
Thomas Greene, an assistant public defender, represented Mills during the guilt phase of his trial in August 1979. Joan Bickerstaff, a specially hired assistant public defender, handled the penalty phase on August 20, 1979, and Greene again represented Mills at the actual sentencing in April 1980. Mills' employer, his grandfather, and his older sister testified at the penalty phase. The grandfather and sister spoke of Mills' father being shot and killed when Mills was a child, of his mother's working as a field hand with the sister being responsible for taking care of her younger siblings, and of his poverty-ridden childhood. Bickerstaff made an impassioned argument to the jury that Mills' life should be spared. She emphasized the disparate treatment received by Mills and his codefendant who testified against Mills and argued that Mills' crime was not the type that deserved the death penalty, that Mills had been raised in a ghetto, and that he was capable of being redeemed. After hearing her argument, the jury recommended that Mills be sentenced to life imprisonment.
Mills and his sister both testified before the judge in April 1980. Greene argued that the judge should follow the jury's recommendation because the aggravators should not be applied to Mills. He also argued that the statutory mitigators of impaired capacity to conform one's conduct and age had been established. The prosecutor, however, pointed out that the jury knew nothing of Mills' juvenile criminal record or that Mills had been convicted *484 both of burglary for stealing the shotgun used to kill this victim and of armed robbery where he used that same shotgun and abducted a store clerk. After hearing both sides, the court overrode the jury's recommendation and sentenced Mills to death.
Mills called numerous witnesses at the 3.850 evidentiary hearing, including his trial attorneys. Greene, Mills' lead attorney, testified that he was responsible only for the guilt phase of the trial and, because he had no responsibility for the penalty phase, that he did nothing to develop mitigating evidence. Although he represented Mills at the actual sentencing several months after the jury made its recommendation, he only looked through the file before appearing before the judge. On cross-examination he admitted that nothing about Mills suggested a mental health examination was needed.
Bickerstaff testified that the public defender's office hired her on Saturday, August 18, 1979, to conduct the penalty phase on the following Monday. She stated that "with the benefit of hindsight" mental health evidence should have been looked at. When she met with Mills, however, he gave her no reason to think that any kind of mental impairment existed.
Bennett Ford, the assistant public defender who supervised the case and who hired Bickerstaff, testified that he was not responsible for Mills' trial and did nothing to prepare for it. He also stated that nothing about Mills led him to suspect any mental impairment. The following exchange took place during Ford's testimony.
Q [by Mills' current counsel]. Was there a tactical or strategic reason for not preparing the penalty phase in advance of the trial?
A [Ford]. No. I mean, again, twenty/twenty hindsight looking back, I don't recall any reason for not doing that.
* * * * * *
Q. Looking back on it, looking back on it today, would it have been wiser to prepare the penalty phase in advance?
A. Well looking back, and knowing what's happened ten, twelve years ago, sure, certainly I would.
* * * * * *
Q. And [mental health mitigating evidence] could have been argued to Judge Woodson had there been mental health evidence originally that Judge Woodson could not overrule the Jury with that evidence?
A. Again, twenty/twenty hindsight, my answer is yes.
In questioning by the court Ford stated that he thought Bickerstaff had done an excellent job to secure the jury recommendation of life imprisonment and that she could not have gotten a better result.
Two psychologists testified that Mills has some brain damage and that he met the criteria for the two statutory mental mitigators, i.e., extreme mental or emotional disturbance and substantially impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. One also stated that Mills' IQ is normal, that he has complete contact with reality and knew what he was doing when this crime occurred, and that the brain damage makes him impulsive. The other testified that Mills has impulse control problems and shows a lack of judgment.
Mills' sister who testified at trial and one of his brothers also testified. They recounted growing up in poverty with parents who did not function as parents and how Mills had suffered two head injuries as a child.
After hearing the testimony and argument by counsel, the court held that Mills had not established that counsel's performance was deficient for failing to develop mental health evidence because "there was nothing to indicate to reasonably competent counsel the existence of any mental mitigating factors." The court, therefore, denied the motion for relief.
Mills argues that the trial court should be reversed because, if trial counsel had presented the mental mitigating evidence developed by current counsel, it would have *485 provided a basis for the jury's recommendation of life imprisonment and prevented affirmance of the override on appeal. He claims to have met both parts of the test for counsel's effectiveness set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), i.e., deficient performance (not presenting the currently tendered evidence) that prejudiced his defense (not preventing the trial court from sentencing him to death). We disagree.
Besides setting out the standard for gauging counsel's performance, Strickland also states: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688, 104 S.Ct. at 2065. To that end, "a particular decision not to investigate must be directly assessed for reasonableness ..., applying a heavy measure of deference to counsel's judgments." Id. at 691, 104 S.Ct. at 2066. Moreover, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. Therefore, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id.
In spite of these admonitions from the Supreme Court, Mills argues that his counsel were ineffective because they did nothing to prepare for the penalty phase. Any lack of preparation, however, is not apparent from the record of the penalty proceedings. Bickerstaff's statement that, "with the benefit of hindsight," she should have investigated Mills' mental health "`is of little persuasion in these proceedings.'" Routly v. State, 590 So.2d 397, 401 n. 4 (Fla. 1991) (quoting Kelley v. State, 569 So.2d 754, 761 (Fla. 1990)). It also points up an admonition from Strickland:
Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted).
As the United States Supreme Court has recognized: "A defendant's mental condition is not necessarily at issue in every criminal proceeding." Ake v. Oklahoma, 470 U.S. 68, 82, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985). None of Mills' original attorneys had any idea that his mental health might be at issue. Current counsel's getting those attorneys to admit that they would, today, routinely pursue evidence for the mental health mitigators illustrates the Supreme Court's concern "that every effort be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. "That current counsel, through hindsight, would now do things differently than original counsel did is not the test for ineffectiveness." Stano v. State, 520 So.2d 278, 281 n. 5 (Fla. 1988). Bickerstaff's effectiveness in securing a jury recommendation of life imprisonment cannot be overlooked. E.g., Francis v. State, 529 So.2d 670 (Fla. 1988); Lusk v. State, 498 So.2d 902 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 517 (1987). Bickerstaff had no reason to suspect that any mental health mitigating evidence could be developed, and we agree with the trial court that Mills has failed to show that she rendered ineffective assistance of counsel.[*]Cf. *486 Blanco v. Wainright, 507 So.2d 1377, 1383 (Fla. 1987) ("trial counsel considered obtaining a psychiatric examination, but ... decided not to do so because appellant gave every appearance of competency and a theory of competency would dilute appellant's strategy of denying guilt... . [M]ental condition is not necessarily an issue in every criminal proceeding."); see Bush v. Wainwright, 505 So.2d 409 (Fla.), cert. denied, 484 U.S. 873, 108 S.Ct. 209, 98 L.Ed.2d 160 (1987).
Even assuming that Bickerstaff's performance was deficient, Mills has failed to demonstrate that her failings "actually had an adverse effect on" his sentence. Strickland, 466 U.S. at 693, 104 S.Ct. at 2067. An override of a jury's recommendation is not improper simply because a defendant can point to some mitigating evidence. Moreover, "even though the jury override might not have been sustained today, it is the law of the case." Johnson v. Dugger, 523 So.2d 161, 162 (Fla. 1988). As pointed out before, the trial court had information on Mills' serious criminal activity committed in the two months between his release from prison and the killing for which he received a death sentence that the jury knew nothing about. Given the psychologists' testimony that Mills' mental problems boiled down to his being impulsive, it is purely speculative that the currently tendered evidence would have carried sufficient weight to abrogate the judge's override of the jury recommendation. Routly; Francis; McCrae v. State, 510 So.2d 874 (Fla. 1987); State v. Bolender, 503 So.2d 1247 (Fla.), cert. denied, 484 U.S. 873, 108 S.Ct. 209, 98 L.Ed.2d 161 (1987); Lusk; Porter v. State, 478 So.2d 33 (Fla. 1985). Therefore, in addition to failing to show that counsel's performance was deficient, Mills has not demonstrated a reasonable probability that the currently tendered evidence would have produced a reversal of the judge's override of the jury's recommendation. Cf. Strickland, 466 U.S. at 700, 104 S.Ct. at 2071 ("there is no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances and, hence, the sentence imposed. Indeed, admission of the evidence respondent now offers might even have been harmful to his case.")
We affirm the trial court's order denying postconviction relief.
It is so ordered.
OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
BARKETT, J., dissents with an opinion, in which SHAW, C.J., and KOGAN, J., concur.
KOGAN, J., dissents with an opinion, in which BARKETT, J., concurs.
BARKETT, Justice, dissenting.
I would reverse and remand for imposition of a life sentence because Mills has met his burden of proving ineffective assistance of counsel under Strickland.
Mills's penalty phase counsel was hired on Saturday to conduct penalty proceedings the following Monday, having had no prior involvement in the case. She testified that she did not even meet Mills until the morning of the penalty phase hearing, armed only with a verbal summary of the evidence at trial, and having neither reviewed any trial documents nor obtained records of any sort pertaining to Mills's background. In fact, no lawyers associated with Mills's defense examined Mills's records or investigated in any way the possible existence of mental mitigating factors, notwithstanding that those records were easily obtainable and with minimal effort they could have discovered information regarding prior mental health evaluations that suggest Mills may have suffered from a brain disfunction. It is ludicrous to suggest that the failure to obtain those records or perform minimal background investigation was reasonable under the circumstances.
At the evidentiary hearing below, the two mental health experts who examined Mills prior to the hearing testified extensively *487 about Mills's mental impairments. They concluded that Mills suffered from a substantially impaired capacity to conform his conduct to the requirements of law and from an extreme mental or emotional disturbance at the time of the offense. They also explained that Mills's level of functioning was below that of his chronological age and that Mills's brain damage, low intelligence, psychological deficiencies, and history of traumatic abuse and deprivation had further diminished his ability to function throughout his life, as well as at the time of the offense. I cannot say beyond a reasonable doubt that this Court would not have reversed the jury override under Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), had such mental mitigating evidence been presented during the penalty phase hearing.
SHAW, C.J., and KOGAN, J., concur.
KOGAN, Justice, dissenting.
Mental mitigating evidence is among the most compelling that can be presented. This is only underscored by the fact that Florida's capital sentencing statute itself expressly recognizes two mitigators that directly measure mental state. § 921.141(6)(b), (f), Fla. Stat. (1989). In addition, the statutes recognize two other factors that touch on mental state: one dealing with emotional duress or an overborne will, and one that gauges emotional immaturity or infirmity due to age. § 921.141(6)(e), (g), Fla. Stat. (1989). Thus, a majority of the statutory mitigators deal with or reflect upon the emotional state of the defendant.
For this reason alone, I cannot agree with the trial court's conclusion that counsel need not have presented such evidence because nothing indicated the existence of mental mitigating factors. In light of the emphasis upon mental mitigation in the statute, I believe counsel's performance always is presumptively deficient if there is no attempt to investigate the possibility of mental mitigating evidence. Such an omission is directly analogous to failing to investigate and develop defenses in the guilt phase such as self-defense or legal justification; or failing to investigate matters that might diminish the degree of the offense, such as a lack of premeditation or a lack of recklessness. Competent counsel always investigates such matters because they are the very heart of the issue being tried, just as the defendant's mental state is at the very heart of the penalty phase.
The remaining question is whether the omission is prejudicial. On this question, I am not convinced that the mere fact of the jury's life recommendation excuses counsel's deficiencies. In light of the Tedder standard, counsel's omission created a record on appeal that was utterly devoid of mitigating evidence to sustain the jury's life recommendation. We so noted in the direct appeal. Mills, 476 So.2d at 179. This earlier record contrasts sharply with the evidence now before us.
In the hearing below, two psychologists testified that Mills "met the criteria for the two statutory mental mitigators, i.e., extreme mental or emotional disturbance and substantially impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." Majority op. at 484. Had this evidence been on the record in the direct appeal, the Court would have had no choice but to reverse the jury override under Tedder. Accordingly, counsel's omission could only have been prejudicial, because Mills would not now be on death row but for that omission.
For these reasons, I would reverse the trial court's order. I believe the present record shows that counsel's prejudicial ineffectiveness kept Mills from receiving the benefit of the jury's recommendation, to which he now is entitled. Thus, I would grant the requested relief and reduce Mills' sentence to life in prison without possibility of parole for twenty-five years.
I respectfully dissent.
BARKETT, J., concurs.
NOTES
[*] Stevens v. State, 552 So.2d 1082 (Fla. 1989), which Mills relies on, is factually distinguishable because Stevens' counsel, in addition to making no investigation of Stevens' background ground, presented no mitigating evidence, made no argument to the jury on his client's behalf, and misrepresented Stevens' background and criminal record to the trial judge.