United States Court of Appeals,

Eleventh Circuit.

No. 96-3506.

Gregory MILLS, Petitioner-Appellant,

v.

Harry K. SINGLETARY, Jr., Secretary, Florida Department of Corrections, Respondent-Appellee.

Dec. 1, 1998.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-1184-Civ-Orl-9), Patricia C. Fawsett, Judge.

Before HATCHETT, Chief Judge, and EDMONDSON and BLACK, Circuit Judges.

PER CURIAM:

In this capital case, appellant Gregory Mills challenges the district court's denial of his

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.

I. BACKGROUND

The Florida Supreme Court described the circumstances surrounding the murder of James

Wright and Mills's trial as follows:

> The evidence at the trial showed that Gregory Mills and his accomplice Vincent Ashley broke into the home of James and Margaret Wright in Sanford between two and three o'clock in the morning, intending to find something to steal. When James Wright woke up and left his bedroom to investigate, Mills shot him with a shotgun. Margaret Wright awakened in time to see one of the intruders run across her front yard to a bicycle lying under a tree. Mr. Wright died from loss of blood caused by multiple shotgun pellet wounds.
>
> Ashley, seen riding his bicycle a few blocks from the Wright home, was stopped and detained by an officer on his way to the crime scene. Another officer saw a bicycle at the entrance to a nearby hospital emergency room, found Mills inside, and arrested him. At police headquarters officers questioned both men and conducted gunshot residue tests on them. Then they were released.
>
> At trial Mills' roommate [Sylvester Davis] testified that he and his girlfriend [Viola May

Stafford] hid some shotgun shells that Mills had given them, that Mills had been carrying a firearm when he left the house the night of the murder, and that Mills had said he had shot someone. He also stated that Mills told him that a city worker had found a shotgun later shown to have fired an expended shell found near the victim's home.

After the murder, Ashley was arrested on some unrelated charges. He then learned that Mills had told his roommate and his girlfriend about the murder and that they in turn had told the police, so he decided to tell the police about the incident. Ashley testified that Mills entered the house (through a window) first, that he, Ashley, then handed the shotgun to him, and that he then entered the house himself. Ashley saw the man in the house had awakened and was getting up, so he exited the house and ran to his bicycle. Then he heard the shot and ran back to the house, where he saw Mills. They both departed the scene on their bicycles, taking separate routes. Ashley was granted immunity from prosecution for these crimes and also for several unrelated charges pending against him at the time he decided to confess and cooperate.

Mills testified in his defense. He said that he arrived home from work on May 24 at around 9:30 p.m. Then he went out, first to one bar, then another, playing pool and socializing. He went home afterwards but could not sleep, he said, because of a toothache and a headache, so he went to the hospital emergency room. There police officers took him into custody.

*Mills v. State,* 476 So.2d 172, 174-75 (Fla.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986).[1]

## II. PROCEDURAL HISTORY

The State of Florida charged Mills through an indictment dated June 29, 1979, with four counts relating to the May 25, 1979 shooting of Wright: (1) first degree felony murder (Count I); (2) burglary (Count II); (3) aggravated battery (Count III); and (4) possessing a firearm despite a prior felony conviction (Count IV). On August 16, 1979, a jury trial commenced. After the trial judge denied Mills's motion for judgment of acquittal, the jury returned verdicts of guilty on the

---

[1]Under 28 U.S.C. § 2254(d), a federal court reviewing a state petitioner's petition for writ of habeas corpus must give a presumption of correctness to the state courts' factual determinations (when certain prerequisites are met). *See Bolender v. Singletary*, 16 F.3d 1547, 1552 n. 1 (11th Cir.), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994); *Cumbie v. Singletary*, 991 F.2d 715, 723 (11th Cir.), *cert. denied,* 510 U.S. 1031, 114 S.Ct. 650, 126 L.Ed.2d 608 (1993). This presumption is applicable equally to state appellate court findings of fact. *See Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Bolender,* 16 F.3d at 1552 n. 1.

charges of first degree felony murder, burglary and aggravated battery.[2] At the penalty phase of the proceedings on the first degree murder conviction, the jury recommended that Mills receive a life sentence. On April 18, 1980, the trial judge overrode the jury's recommendation after finding that the aggravating factors surrounding Mills's crime outweighed the absence of statutory mitigating factors pursuant to Florida Statute § 921.141, and sentenced Mills to death.[3]

On direct appeal to the Florida Supreme Court, Mills raised the following issues: (1) whether sufficient evidence supported his felony murder conviction; (2) whether he received ineffective assistance of counsel because of a conflict of interest in the public defender's office; (3) whether the trial court violated his confrontation rights in abridging cross-examination of Ashley; (4) whether the trial court erred in admitting gunshot residue tests; (5) whether his conviction for aggravated battery was improper; (6) whether his convictions for both felony murder and burglary were improper; and (7) whether the trial judge's override of the jury's recommendation was improper. *See Mills,* 476 So.2d at 175, 179.

---

[2]Florida later filed a *nolle prosequi* as to Count IV.

[3]The trial court found that the following statutory aggravating factors supported Mills's death sentence: (1) under sentence of imprisonment when he committed the murder; (2) previously convicted of a felony involving the use or threat of violence; (3) knowingly creating a great risk of death to many persons; (4) murder committed while Mills was engaged in the commission of or an attempt to commit or flight after committing the robberies; (5) pecuniary gain; (6) heinous, atrocious or cruel. The trial court additionally found that the following statutory mitigating factors were *not* present: (1) no significant history of prior criminal activity; (2) murder committed while Mills was under the influence of extreme mental or emotional disturbance; (3) the victims were participants or consented to Mills's acts or conduct; (4) Mills was an accomplice in the murder that another committed, or Mills's participation in the murder was minor; (5) Mills acted under extreme duress or under the substantial domination of another; (6) Mills's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired; (7) Mills's age at the time of the crime. *See* Fla. Stat. § 921.141 (1979). The trial court also sentenced Mills to ten years of imprisonment on Count II (burglary) and five years of imprisonment on Count III (aggravated battery), with the sentences running concurrently.

The Florida Supreme Court affirmed Mills's convictions and sentences for felony murder and burglary, but vacated the sentence and conviction for aggravated battery. *See Mills,* 476 So.2d at 175, 177. The Florida Supreme Court held that Mills's contentions concerning ineffective assistance and gunshot residue tests were meritless, and that the trial court did not abridge Mills's right to confront the witnesses against him. *See Mills,* 476 So.2d at 175-77.

The Florida Supreme Court then analyzed the trial judge's override of the jury's recommendation at Mills's sentencing. It found that the trial judge had found the existence of no mitigating factors and the following six aggravating factors pursuant to Florida Statute § 921.141:(1) under sentence of imprisonment; (2) previous conviction of violent felony; (3) great risk of death to many persons; (4) felony murder; (5) pecuniary gain; and (6) heinous, atrocious or cruel. The Florida Supreme Court held that the following aggravating factors were improper: (1) great risk of death to many persons; (2) pecuniary gain; and (3) heinous, atrocious or cruel. It affirmed the remainder of the aggravating factors, as well as the trial court's finding that no mitigating factors existed. *See Mills,* 476 So.2d at 177-79. The Florida Supreme Court affirmed the trial judge's imposition of the death sentence, holding that the override complied with *Tedder v. State,* 322 So.2d 908 (Fla.1975).[4] The United States Supreme Court denied Mills's petition for writ of certiorari. *Mills v. Florida,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986).

---

[4]Specifically, the Florida Supreme Court held that

> the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ. There are three valid statutory aggravating circumstances, and the trial judge has found that there are no valid mitigating circumstances. The purported mitigating circumstances claimed by Mills, but not found by the trial judge, are not sufficient to outweigh the aggravating circumstances nor do they establish a reasonable basis for the jury's recommendation.

*Mills,* 476 So.2d at 179 (construing *Tedder,* 322 So.2d at 910).

The Governor of Florida signed Mills's death warrant, and Mills thereafter moved for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The trial court denied all requested relief. Mills appealed the trial court's denial to the Florida Supreme Court, petitioned for a writ of habeas corpus and requested a stay of execution. The Florida Supreme Court denied Mills's petition for habeas corpus, but reversed the trial court's summary denial of his 3.850 motion and directed the trial court to hold an evidentiary hearing on Mills's 3.850 claim of ineffective assistance relating to his lawyer's failure to develop and present evidence that would tend to establish statutory or nonstatutory mental mitigating circumstances. *See Mills v. Dugger,* 559 So.2d 578, 579 (Fla.1990).[5]

The trial court held an evidentiary hearing pursuant to the Florida Supreme Court's remand. Mills called numerous witnesses at the evidentiary hearing, including: his trial attorneys, one of whom testified that "with the benefit of hindsight" she would have looked at mental health evidence; two psychologists who testified that Mills had some brain damage and satisfied the criteria for two statutory mental mitigators; and his sister and one of his brothers, who recounted Mills's difficult upbringing. The trial court held that Mills failed to show that his lawyer's performance was deficient under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

---

[5]Mills included seven claims in his petition for writ of habeas corpus: (1) the Florida Supreme Court decided wrongly on appeal the issue of Mills not being allowed to impeach his codefendant; (2) the trial judge's override of the jury's recommendation was improper; (3) appellate counsel was ineffective because Mills should have been resentenced pursuant to *Elledge v. State*, 346 So.2d 998 (Fla.1977); (4) the trial court erred in finding an automatic aggravating factor (felony murder); (5) the trial court erred in allowing gunshot residue test evidence; (6) the trial court impermissibly shifted to Mills the burden of proving life to be the proper penalty; and (7) consideration of victim impact evidence violated *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). The Florida Supreme Court held that "Mills raised most of these issues on direct appeal or in his 3.850 motion; others should have been raised, if at all, on appeal.... Claims 1, 2, and 4 through 7 are ... procedurally barred." *Mills,* 559 So.2d at 579 (citations omitted). The Florida Supreme Court also held that Mills's lawyer did not render ineffective assistance on appeal. *See Mills,* 559 So.2d at 579.

The Florida Supreme Court affirmed, holding that Mills's lawyer's admission that "with the benefit of hindsight" he would have investigated mental health evidence "illustrates the Supreme Court's concern [in ineffective assistance claims] "that every effort be made to eliminate the distorting effects of hindsight.' " *Mills v. State,* 603 So.2d 482, 485 (Fla.1992) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). The Florida Supreme Court found that Mills also failed to satisfy the prejudice prong of *Strickland,* holding that "Mills has not demonstrated a reasonable probability that the currently tendered evidence would have produced a reversal of the judge's override of the jury's recommendation." *Mills,* 603 So.2d at 486.

Mills then filed a petition for extraordinary relief and for writ of habeas corpus with the Florida Supreme Court. He raised two issues in the petition: (1) the Florida Supreme Court performed an inadequate harmless error analysis in affirming the death sentence; and (2) the felony-murder aggravator is an unconstitutional automatic aggravating circumstance in felony murders. The Florida Supreme Court found both issues to be procedurally barred. *Mills v. Singletary,* 606 So.2d 622, 623 (Fla.1992).

After exhausting state remedies, Mills filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Florida. He claimed that: (1) he received ineffective assistance of counsel at the penalty and sentencing phase; (2) the trial court and the Florida Supreme Court failed to evaluate adequately mitigation evidence in contravention of *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991); (3) the Florida Supreme Court erred in upholding the jury override despite its invalidating three aggravating factors; (4) his sentence rested upon an unconstitutional automatic aggravating factor (felony murder); (5) the jury override resulted in an arbitrary, capricious and unreliably-imposed death sentence; (6) the trial court violated his confrontation rights when it precluded certain impeachment

and cross-examination of witness Ashley;  (7) he received ineffective assistance of counsel because of a conflict of interest in the public defender's office;  (8) the trial judge erroneously considered nonstatutory aggravating factors in overriding the jury's recommendation of a life sentence, and his lawyer rendered ineffective assistance in failing to object;  (9) the trial judge erred in failing to find mitigating factors;  (10) the trial court erred in admitting testimony and evidence of gunshot residue tests;  (11) he received ineffective assistance of counsel at the guilt phase of his trial;  (12) the trial court erred in admitting as rebuttal evidence results from the gunshot residue test;  (13) the government engaged in prosecutorial misconduct at the sentencing hearing;  and (14) the failure to transcribe the bench conferences resulted in trial error and ineffective assistance of counsel.  The district court found that all of Mills's claims were either meritless or procedurally barred, and therefore denied Mills's section 2254 petition in a 51-page order.  *See Mills v. Singletary,* No. 92-1184-CIV-ORL-19 (M.D.Fla. Aug. 19, 1996).

### III. ISSUES

Mills raises the following issues in this appeal:  (1) whether the trial judge's override of the jury's recommendation of a life sentence, and the Florida Supreme Court's affirmance, resulted in an arbitrary and discriminatory sentence of death;  (2) whether the Florida Supreme Court violated *Parker v. Dugger* in failing to review adequately the record for mitigating factors;  (3) whether the Florida Supreme Court conducted an inadequate harmless error analysis;  (4) whether Mills received ineffective assistance of counsel at the guilt phase, jury penalty phase and judge sentencing phase;  (5) whether the felony murder aggravating factor is unconstitutional;  (6) whether Mills's lawyers had an actual conflict of interest that adversely affected their representation;  (7) whether the trial court violated his confrontation rights;  (8) whether the introduction of nonstatutory aggravating factors rendered his trial fundamentally unfair;  (9) whether the trial court failed to consider

mitigating evidence in violation of *Eddings v. Oklahoma,* 455 U.S. 104, 114-115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); (10) whether the introduction of unreliable scientific evidence rendered Mills's trial unfair; (11) whether the prosecutors engaged in misconduct during the penalty phase of Mills's trial.

Because we find that Mills is not entitled to relief on the merits of some of his claims and has procedurally defaulted the others, we affirm the district court's denial of his petition for writ of habeas corpus. Specifically, we hold in accord with the district court that Mills has procedurally defaulted on the following claims: whether the introduction of nonstatutory aggravating factors rendered his trial fundamentally unfair; whether the prosecutors engaged in misconduct during the penalty phase of Mills's trial; and whether Mills's lawyer rendered ineffective assistance of counsel at the guilt phase. We address Mills's remaining issues in turn.[6]

## IV. DISCUSSION

A. Jury Override

Mills first challenges the trial court's override of the jury's recommendation of life imprisonment and the Florida Supreme Court's subsequent affirmance. The trial court found that six statutory aggravating factors, as well as the absence of statutory mitigating factors, supported a death sentence. The Florida Supreme Court held that three of the aggravating factors—great risk of death to many persons, pecuniary gain and heinous, atrocious or cruel—were erroneous and that the trial court's finding that no mitigating circumstances existed was correct in affirming Mills's death sentence. *See Mills,* 476 So.2d at 178-79.

---

[6]Mills filed his petition for writ of habeas corpus on December 23, 1992, before the effective date (April 24, 1996) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and thus the AEDPA standard of review provisions are not applicable. *See Lindh v. Murphy*, 521 U.S. 320, ----, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997); *Neelley v. Nagle*, 138 F.3d 917, 921 (11th Cir.1998).

In Florida, a jury's recommendation of a life sentence is entitled to "great weight," but a trial judge may overturn such a recommendation when "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." *Tedder,* 322 So.2d at 910.[7] Our review of a jury override "is not to second-guess the deference accorded the jury's recommendation in a particular case, but to ensure that the result of the process is not arbitrary or discriminatory." *Spaziano v. Florida,* 468 U.S. 447, 465, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Thus, our role is not to second guess the Florida courts on questions of state law, but to determine whether the application of the override scheme in Mills's case resulted in an imposition of the death penalty in an arbitrary or discriminatory manner.[8]

---

[7]This court, and the Supreme Court, have analogized the "great weight" given to a jury's recommendation as having the "effect of placing a thumb on one side of the trial judge's sentencing scale—either on the death side or the life side." *Glock v. Singletary,* 65 F.3d 878, 892 (11th Cir.1995) (*en banc*) (Tjoflat, J., dissenting), *cert. denied,* --- U.S. ----, 117 S.Ct. 225, 136 L.Ed.2d 157 (1996); *see Stringer*, 503 U.S. at 232, 112 S.Ct. 1130.

[8]The Supreme Court in *Spaziano* discussed Florida's override scheme and found it to be constitutional. This court has further discussed Florida's override scheme and its safeguards that render it unlikely that Florida courts will impose the death penalty in an arbitrary or discriminatory manner:

> First, several Florida procedural rules, of both statutory and case law origin, constrain trial judges from imposing the death penalty in an arbitrary or discriminatory manner. Among these significant safeguards is § 921.141(3) of the Florida Statutes, which requires trial judges to independently review the evidence and make detailed written findings regarding aggravating and mitigating circumstances before imposing the death penalty. Another significant safeguard is the *Tedder* standard. Second, the meaningful appellate review by the Florida Supreme Court in every capital case further reduces the likelihood that the death penalty will be imposed in an arbitrary or discriminatory manner. That court is required by law to review every death sentence to ensure that it has not been imposed arbitrarily or capriciously. The [*Spaziano*] Court noted that there has been no evidence that the Florida Supreme Court has failed to execute its responsibility faithfully, or hesitated to reverse a trial judge who has derogated the jury's role by failing to comply with the mandates of *Tedder.* Thus, not only are Florida trial judges provided with procedural rules to aid them in performing their duty in a constitutional manner, the likelihood that they will succeed in

Mills contends that Florida's override scheme resulted in an arbitrary and discriminatory death sentence because: Florida arbitrarily affirmed an override when Florida courts have sentenced similarly-situated capital defendants (convicted of felony murder) to life; the timing of appellate review, and the use of the law of the case doctrine, resulted in an arbitrary imposition of a death sentence because Florida courts might not sustain the jury override today; the facts of the case were not extraordinary for a capital case; the number and type of aggravating factors that the Florida Supreme Court struck were not considered effectively; Florida ignored codefendant Ashley's total immunity; and Florida ignored mitigation in the record. As an initial matter, we agree with the district court that several of Mills's contentions concerning "factual or temporal similarities"—initially, that similarly-situated capital defendants have received life sentences and that the facts of Mills's crime were not extraordinary for a capital case—are actually requests for a proportionality review. We have instructed district courts to refuse such requests when deciding habeas corpus petitions. *See Lindsey v. Smith,* 820 F.2d 1137, 1154 (11th Cir.1987), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989); *Tucker v. Zant,* 724 F.2d 882, 895 (11th Cir.1984); *Moore v. Balkcom,* 716 F.2d 1511, 1518 (11th Cir.1983), *cert. denied,* 465 U.S. 1084, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984).[9]

---

> ignoring these rules or incorrectly following them is reduced significantly by meaningful appellate review.

*Parker v. Dugger,* 876 F.2d 1470, 1474 (11th Cir.1989) (citations omitted), *rev'd on other grounds,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).

[9]As the district court correctly noted, we held in *Moore* that:

> [a] federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, "get out the record" to see if the state court's findings of fact, their conclusion based on a review of similar cases, was supported by the "evidence" in the similar cases. To do so would thrust the federal judiciary into the substantive policy making area of the state. It is the

Mills next argues that the application of the "law of the case" doctrine, and the inconsistent application of the *Tedder* standard in Florida courts at the time of his review, resulted in the arbitrary imposition of his death sentence. Mills identifies the Florida Supreme Court's proclamation in *Cochran v. State* that "since 1985, the Court has determined that *Tedder* means precisely what it says, that the judge must concur with the jury's life recommendation unless "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ.' " 547 So.2d 928, 933 (Fla.1989) (quoting *Tedder,* 322 So.2d at 910). The Florida Supreme Court ruled on Mills's override claim in 1985. Mills contends that the timing of his direct appeal and the subsequent application of the law of the case doctrine resulted in an arbitrary death sentence, and that his sentence would have been different if the Florida Supreme Court had reviewed his claim after 1985.[10]

Again, however, Mills is actually requesting a proportionality review, which the district court

---

state's responsibility to determine the procedure to be used, if any, in sentencing a criminal to death.

*Moore,* 716 F.2d at 1518.

[10]*Cochran* notes Justice Shaw's commentary in his special concurrence to *Grossman v. State,* in which he stated:

During 1984-1985, we affirmed on direct appeal trial judge overrides in eleven of fifteen cases, seventy-three percent. By contrast, during 1986 and 1987, we have affirmed overrides in only two of eleven cases, less than twenty percent. This current reversal rate of over eighty percent is a strong indicator to judges that they should place less reliance on their independent weighing of aggravation and mitigation....

*Cochran,* 547 So.2d at 933 (quoting *Grossman v. State*, 525 So.2d 833, 851 (Fla.1988) (Shaw, J., specially concurring), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989)).

correctly refused to entertain.[11]  To compare Mills's situation with other Florida capital defendants whose override issues were decided after 1985 would be in contravention of our role as a federal court.  *See, e.g., Antone v. Strickland,* 706 F.2d 1534, 1538 (11th Cir.) ("[i]t is not the role of the federal courts in Section 2254 proceedings to retry the circumstances contributing to the state's imposition of the death penalty."), *cert. denied,* 464 U.S. 1003, 104 S.Ct. 511, 78 L.Ed.2d 699 (1983).  Additionally, the *Spaziano* Court in 1984 remarked that,

> there is no evidence that the Florida Supreme Court has failed in its responsibility to perform meaningful appellate review of each death sentence, either in cases in which both the jury and the trial court have concluded that death is the appropriate penalty or in cases when the jury has recommended life and the trial court has overriden the jury's recommendation and sentenced the defendant to death.

*Spaziano*, 468 U.S. at 466, 104 S.Ct. 3154 (citing *Barclay v. Florida*, 463 U.S. 939, 971-72, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (Stevens, J., concurring)).

Turning to Mills's other contentions on the override claim, he argues that the trial court and the Florida Supreme Court ignored arbitrarily Ashley's grant of total immunity.  In Florida, the disparate treatment of a codefendant can constitute a nonstatutory mitigating circumstance when the defendants are equally culpable.  *See Bolender,* 16 F.3d at 1565-66 n. 27;  *Pentecost v. State,* 545 So.2d 861, 863 (Fla.1989) ("[t]he disparate treatment of equally culpable accomplices can serve as a valid basis for a jury's recommending life imprisonment.").  The record does not show, however, that Ashley was "equally culpable" in the murder of James Wright.  *See White v. Dugger,* 523 So.2d 140, 141 (Fla.) ("[i]t is permissible to impose different sentences on capital co-defendants where their various degrees of participation and culpability are different from one another."), *cert. denied,*

---

[11]Mills attributes much significance to the district court's pronouncement in a previous order that application of the law of the case doctrine to his case indicates "a certain level of arbitrariness."  Although the district court's order denying Mills's petition conceded that Mills's argument was "logically attractive," the court correctly held that Mills's argument on this issue was actually a request for proportionality review.

488 U.S. 871, 109 S.Ct. 184, 102 L.Ed.2d 153 (1988). We agree with the district court that Mills's argument on this point is unpersuasive.

Mills also contends that the trial court and the Florida Supreme Court ignored mitigation evidence in the record. We find no merit in this argument for several reasons. First, it is well-settled that in override cases, "the mere presence of mitigating evidence does not automatically provide a reasonable basis for the jury's recommendation." *Francis v. Dugger,* 908 F.2d 696, 704 (11th Cir.1990), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1696, 114 L.Ed.2d 90 (1991); *see Lusk v. Dugger,* 890 F.2d 332, 342 (11th Cir.1989) ("[t]he state courts concluded that there were no *reasonable* bases for the jury's recommendation despite the fact that both the jury as advisor and the judge as sentencer were made aware of mitigating factors.... [W]e do not find that the result of the application of *Tedder* was arbitrary or irrational."), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 805 (1990). Second, the Florida Supreme Court on direct review held that Mills's purported mitigating circumstances neither outweighed the aggravating circumstances nor established a reasonable basis for the jury's recommendation. *See Mills,* 476 So.2d at 178-79. Finally, Justice McDonald, in his concurring and dissenting opinion, discussed the purported nonstatutory mitigation evidence that Mills presented. *See Mills,* 476 So.2d at 180 (McDonald, J., concurring in part and dissenting in part). The Florida Supreme Court was well aware of any potential nonstatutory mitigating evidence.

The Florida Supreme Court's opinion on direct review reveals that the Florida courts did not impose Mills's death sentence in an arbitrary and discriminatory manner. The court reviewed Mills's sentencing and invalidated three of the aggravating factors that the trial court had found. The court also agreed with the trial court's finding that no mitigating factors existed and held that "the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could

differ." *Mills,* 476 So.2d at 179.  The Florida Supreme Court complied with the mandate of *Tedder,* and, as the district court held, Mills's case is similar to *Francis v. Dugger.  See Francis,* 908 F.2d at 704 (holding that override was not arbitrary and discriminatory where jury's recommendation of life imprisonment may have been the product of defense counsel's highly impassioned closing argument, where defendant had a prior criminal history and where no valid statutory mitigating factors and three statutory aggravating factors existed).

B. *Parker v. Dugger* claim

Mills contends that the Florida courts failed to consider and evaluate the record for mitigation evidence that would have precluded the trial court's override of the jury recommendation, in contravention of *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).  Mills also argues that the Florida Supreme Court failed to conduct an independent review of nonstatutory mitigating factors presented at sentencing.  We review the district court's factual finding that the Florida courts considered and evaluated the record for mitigation evidence under the clearly erroneous standard.  *Spaziano v. Singletary,* 36 F.3d 1028, 1032 (11th Cir.1994), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 911, 130 L.Ed.2d 793 (1995).

After a review of the record, we find no clear error in the district court's finding that the trial court weighed and considered evidence of mitigation and aggravation, including nonstatutory mitigation.  The trial court's sentencing order concluded, "[i]t is the finding of this Court after weighing the aggravating and mitigating circumstances that there are sufficient aggravating circumstances as specified in 921.141 and insufficient mitigating circumstances therein that a sentence of death is justified."[12]  Also, as the district court found, the trial court's order denying

---

[12]At the time of Mills's sentencing, Florida Statute § 921.141(3) required that the trial judge set forth explicit findings as to only the statutory aggravating and mitigating circumstances.  *See Mason v. State*, 438 So.2d 374, 379-80 (Fla.1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1330,

Mills's motion for post-conviction relief noted that Mills had presented substantial mitigating evidence at the sentencing phase, including Mills's disadvantaged upbringing.

Additionally, we agree with the district court's finding that the Florida Supreme Court evaluated adequately mitigation evidence in the record, based on our discussion of the override claim. The Florida Supreme Court—on direct review and again on review of Mills's post-conviction 3.850 motion—discussed mitigating circumstances in the record. *See Mills,* 603 So.2d at 483-84 (post-conviction 3.850 motion); *Mills,* 476 So.2d at 178-79 (direct review). Justice McDonald's concurring and dissenting opinion on direct review also shows that the Florida Supreme Court considered nonstatutory mitigating factors. *See Mills,* 476 So.2d at 180 (McDonald, J., concurring in part and dissenting in part). The district court's finding that the Florida Supreme Court considered mitigation evidence adequately and within the dictates of *Parker v. Dugger* is thus not clearly erroneous.[13]

C. The Florida Supreme Court's Harmless Error Analysis

Mills contends that the Florida Supreme Court, after invalidating three of the trial court's aggravating factors, conducted an inadequate harmless error analysis in contravention of the Supreme Court's opinions in *Sochor v. Florida,* 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992) and *Stringer v. Black,* 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). Mills raised this issue previously in a petition for writ of habeas corpus in the Florida courts. The Florida

_____

79 L.Ed.2d 725 (1984). Florida has since changed the statute and now requires a trial court to evaluate expressly in its sentencing order each nonstatutory mitigating circumstance that a defendant proposes. *See Campbell v. State*, 571 So.2d 415, 419-20 (1990).

[13]Mills raises as a separate issue that the trial court's failure to find mitigating circumstances, and the Florida Supreme Court's subsequent affirmance (despite noting that mitigation was in the record), violated *Eddings v. Oklahoma,* 455 U.S. 104, 114-15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Consistent with our analysis above, we reject this argument as well.

Supreme Court denied Mills's petition, holding that "*Sochor* is not a change in the law that will save Mills's first claim [of inadequate harmless error analysis] from a procedural bar, and that claim is barred from consideration." *Mills,* 606 So.2d at 623.

This court recognizes that "[f]ederal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar ... and that bar provides an adequate and independent state ground for denying relief." *Johnson v. Singletary,* 938 F.2d 1166, 1173 (11th Cir.1991) (*en banc*) (citing *Harris v. Reed,* 489 U.S. 255, 262-63, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)), *cert. denied,* 506 U.S. 930, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992). We conclude that Mills has procedurally defaulted this claim. The Florida Supreme Court "clearly and expressly" stated that its judgment rested on a procedural bar, and the bar provides an adequate and independent state ground for denying relief. We note that Mills has not attempted to except himself from this bar to review through showing cause for and prejudice from the procedural default. *See Wainwright v. Sykes,* 433 U.S. 72, 90-91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Johnson,* 938 F.2d at 1174-75.[14]

D. Ineffective Assistance of Counsel (Penalty Phase and Sentencing)

Mills contends that his penalty phase lawyer, Joan Bickerstaff, and his sentencing lawyer, Thomas Greene, rendered ineffective assistance because: (1) both failed to investigate mitigating evidence and to prepare for their respective proceedings; and (2) both failed to have a mental health evaluation of Mills performed, and failed to argue mental health issues as mitigating evidence. A habeas corpus petitioner's ineffective assistance of counsel claim is a mixed question of law and fact,

---

[14]We also note that Mills does not qualify for two additional exceptions to procedural default: (1) if the alleged constitutional violation resulted in the conviction of an innocent defendant; *see Johnson,* 938 F.2d at 1174; or (2) if the state procedural bar has been inconsistently or irregularly applied; *see Johnson v. Mississippi,* 486 U.S. 578, 587-88, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988).

subject to *de novo* review. *Dobbs v. Turpin,* 142 F.3d 1383, 1386 (11th Cir.1998). To obtain relief on this claim, Mills must show that (1) his lawyers' performance was deficient and "fell below an objective standard of reasonableness," and (2) this deficient performance prejudiced him so that "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington,* 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The Florida Supreme Court, upon review of the trial court's denial of Mills's motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, made the following findings concerning Mills's ineffective assistance of counsel contentions:

> Mills' employer, his grandfather, and his oldest sister testified at the penalty phase. The grandfather and sister spoke of Mills' father being shot and killed when Mills was a child, of his mother's working as a field hand with the sister being responsible for taking care of her younger siblings, and of his poverty-ridden childhood. Bickerstaff made an impassioned argument to the jury that Mills' life should be spared. She emphasized the disparate treatment received by Mills and his codefendant who testified against Mills and argued that Mills' crime was not the type that deserved the death penalty, that Mills had been raised in a ghetto, and that he was capable of being redeemed. After hearing her argument, the jury recommended that Mills be sentenced to life imprisonment.
>
> Mills and his sister both testified before the judge in April 1980 [at his sentencing]. Greene argued that the judge should follow the jury's recommendation because the aggravators should not be applied to Mills. He also argued that the statutory mitigators of impaired capacity to conform one's conduct and age had been established. The prosecutor, however, pointed out that the jury knew nothing of Mills' juvenile criminal record or that Mills had been convicted both of burglary for stealing the shotgun used to kill this victim and of armed robbery where he used that same shotgun and abducted a store clerk. After hearing both sides, the court overrode the jury's recommendation and sentenced Mills to death.

*Mills,* 603 So.2d at 483-84. The Florida Supreme Court found that Greene, who had also served as Mills's lead attorney during the guilt phase, testified at the 3.850 hearing that: (1) "because he had no responsibility for the penalty phase ... he did nothing to develop mitigating evidence"; (2) "[a]lthough he represented Mills at the actual sentencing several months after the jury made its recommendation, he only looked through the file before appearing before the judge"; and (3) "[o]n

cross-examination he admitted that nothing about Mills suggested a mental health examination was needed." *Mills,* 603 So.2d at 484. The Florida Supreme Court also found that Bickerstaff testified at the 3.850 hearing that "the public defender's office hired her on Saturday, August 18, 1979 to conduct the penalty phase on the following Monday[,]" and that " "with the benefit of hindsight' mental health evidence should have been looked at." *Mills,* 603 So.2d at 484.[15] Both the trial court and the Florida Supreme Court held that Mills failed to demonstrate that his lawyers had rendered ineffective assistance. *Mills,* 603 So.2d at 486.

In determining whether a lawyer's performance was deficient under *Strickland,* we must inquire "whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. We determine the reasonableness of Mills's lawyers' performance "through a deferential review of all the circumstances from the perspective of counsel at the time of the alleged errors." *Baldwin v. Johnson,* 152 F.3d 1304, 1311 (11th Cir.1998). As the district court noted, Mills's family members testified as to his "poverty-ridden childhood and difficult upbringing." Both lawyers made impassioned arguments to spare Mills's life. We hold that the district court did not err in holding that Mills's lawyers prepared adequately for their respective roles in Mills's proceedings, that they presented mitigating circumstances at the penalty phase and sentencing and that they therefore did not render deficient performance under *Strickland.*

Mills also contends that his lawyers' failure to pursue mental health issues as mitigating

---

[15]According to *Strickland,* "[a]lthough state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference of § 2254(d), and although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052; *see also Oats v. Singletary,* 141 F.3d 1018, 1028 (11th Cir.1998) (remarking that state court findings of fact in a 3.850 hearing on ineffective assistance of counsel are subject to the deference of section 2254(d)).

evidence demonstrated ineffective assistance. Both lawyers testified at the 3.850 hearing that nothing suggested that any mental heath examination was needed or that Mills indicated that they should offer any mental health issues as mitigating evidence. Bickerstaff also testified that "with the benefit of hindsight" she would have examined mental health evidence. As *Strickland* warns, however, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Mills's lawyers presented witnesses who testified as to mitigating circumstances at the penalty phase and sentencing, and "[a] defendant's mental condition is not necessarily at issue in every criminal proceeding...." *Ake v. Oklahoma,* 470 U.S. 68, 82, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). We agree with the district court that Mills's lawyers' actions fell within *Strickland*'s wide range of reasonable professional assistance.

We additionally agree with the district court that even if Mills's lawyers' performance was deficient, Mills cannot demonstrate that the alleged failure to present mitigating evidence prejudiced him at the penalty phase because the jury recommended a life sentence. *See Routly v. Singletary,* 33 F.3d 1279, 1297 (11th Cir.1994) ("[petitioner] cannot show that any failure to present mitigating evidence to the jury prejudiced him to any degree whatsoever in the jury's consideration of penalty because the jury recommended a sentence of life imprisonment anyway."), *cert. denied,* 515 U.S. 1166, 115 S.Ct. 2627, 132 L.Ed.2d 867 (1995). Mills has also failed to demonstrate prejudice at sentencing under *Strickland* and its progeny. Mills's trial judge considered evidence at the 3.850 hearing concerning his ineffective assistance claim. The Florida Supreme Court found that

> the trial court had information on Mills' serious criminal activity committed in the two months between his release from prison and the killing for which he received a death sentence that the jury knew nothing about. Given the psychologists' testimony [at the 3.850 hearing] that Mills' mental problems boiled down to being impulsive, it is purely speculative

that the currently tendered evidence would have carried sufficient weight to abrogate the judge's override of the jury recommendation.

603 So.2d at 486. The trial court also considered evidence of Mills's childhood through testimony of his family members and the presentence investigation report. We hold that the district court correctly concluded that the failure of Mills's lawyers to present mental health evidence as mitigating evidence and their failure to seek mitigating evidence did not prejudice him. *See Routly,* 33 F.3d at 1297 (holding that the petitioner could not show prejudice because the essence of the mitigation evidence that he argued was before the judge through the presentence investigation report and his mental health expert's testimony, and the judge referred to it specifically in the sentencing order; further, the same judge and the Florida Supreme Court held that the mitigation evidence would not have changed the result).

E. Felony Murder Aggravating Factor

Mills contends that his death penalty conviction was erroneously predicated upon "the unreliable automatic finding" of the felony murder aggravating factor for the felony murder that formed the basis of his conviction. The Florida Supreme Court previously addressed this contention, rejecting the substance of it on direct appeal and holding that it was procedurally barred in two separate habeas corpus petitions. *See Mills,* 606 So.2d at 623 (second habeas corpus petition); *Mills,* 559 So.2d at 579 (first habeas corpus petition); *Mills,* 476 So.2d at 178 (direct review). We hold that Mills has procedurally defaulted this claim. *See Johnson,* 938 F.2d at 1173. In any event, this circuit has considered this argument previously and found it to be meritless. *See Johnson v. Dugger,* 932 F.2d 1360, 1368-70 (11th Cir.), *cert. denied,* 502 U.S. 961, 112 S.Ct. 427, 116 L.Ed.2d 446 (1991); *Bertolotti v. Dugger,* 883 F.2d 1503, 1527-28 (11th Cir.1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990).

F. Conflict of Interest/Confrontation Clause Claim

The public defender's office represented both Mills and codefendant Vincent Ashley before Florida charged Mills with felony murder. Upon learning of the potential conflict of interest in representing both, the public defender's office withdrew from representation of Ashley, and the trial court appointed him private counsel. While the dual representation existed, however, Ashley spoke to a public defender investigator. At trial, Florida granted codefendant Ashley complete immunity from prosecution in exchange for his testimony concerning Mills's murder of James Wright. During cross-examination of Ashley, Mills's lawyer (Greene, an assistant public defender) inquired about statements Ashley made to the public defender investigator in an attempt to impeach Ashley with prior inconsistent statements. Florida objected, and Ashley invoked the attorney-client privilege in refusing to answer Greene's questions concerning the statements. Mills contends that: (1) the public defender's prior representation of Ashley resulted in ineffective assistance of counsel at trial because of a conflict of interest; and (2) the court's curtailment of his cross-examination of Ashley violated his confrontation rights under the Sixth Amendment.

Mills's conflict of interest claim is subject to *de novo* review. "[W]e defer to the district court's findings of fact unless we determine that the findings are clearly erroneous. We apply our own judgment, however, as to whether the conduct in question constitutes ... an actual conflict of interest warranting relief." *Buenoano v. Singletary,* 74 F.3d 1078, 1083 (11th Cir.) (citations omitted), *cert. denied,* --- U.S. ----, 117 S.Ct. 520, 136 L.Ed.2d 408 (1996). "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Mills must show that an actual conflict exists; "[a] possible, speculative or merely hypothetical conflict does not suffice." *Lightbourne v. Dugger,* 829 F.2d 1012, 1023 (11th Cir.1987), *cert. denied,* 488 U.S. 934, 109 S.Ct. 329, 102

L.Ed.2d 346 (1988); *see also Burden v. Zant,* 24 F.3d 1298, 1305 (11th Cir.1994). In *Smith v. White,* this circuit adopted a test to distinguish actual from potential conflict:

> We will not find actual conflict [of interest] unless appellants can point to specific instances in the record to suggest an actual conflict or impairment of their interests.... Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.

*Smith v. White,* 815 F.2d 1401, 1404-05 (11th Cir.) (quoting *Barham v. United States,* 724 F.2d 1529, 1532 (11th Cir.), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984)), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).

The district court found that no actual conflict existed because

> [a]n alleged conflict of interest on the assistant public defender's part did not impede or prevent [testimony concerning Ashley's statements to Scarpello] from being elicited during Ashley's cross-examination; the statements were made during the course of an attorney-client relationship, and Mr. Ashley had the right to invoke the privilege's protection.

We agree with the district court. The public defender's alleged loyalties did not force him to forego cross-examination of Ashley; instead, Greene cross-examined Ashley extensively and attempted to elicit the statements that caused Ashley to invoke the attorney-client privilege. Mills does not point to anything in the record that demonstrates that Greene made a choice to refrain from cross-examining Ashley in a manner harmful to Mills, or that Greene had inconsistent interests. "In order to warrant habeas corpus relief, the petitioner has to show not only an actual conflict of interest but also that the conflict adversely affected his lawyer's representation." *Stevenson v. Newsome,* 774 F.2d 1558, 1562 (11th Cir.1985), *cert. denied,* 475 U.S. 1089, 106 S.Ct. 1476, 89 L.Ed.2d 731 (1986). Based on the foregoing analysis, we agree with the district court that Mills has not shown adverse effect.

Mills also contends that the trial court's allowing Ashley to invoke the attorney-client

privilege, and the resulting curtailment of his cross-examination of Ashley, violated his confrontation rights under the Sixth Amendment. We review whether the trial court erred in limiting cross-examination for a clear abuse of discretion. *See United States v. Tokars,* 95 F.3d 1520, 1531 (11th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 1328, --- L.Ed.2d ---- (1997). The court's discretion in limiting the scope of cross-examination, however, is limited to the requirements of the Sixth Amendment's guarantee of the right of confrontation. *See Tokars,* 95 F.3d at 1531.

"The Confrontation Clause guarantees criminal defendants an opportunity to impeach through cross-examination the testimony of witnesses for the prosecution." *United States v. Baptista-Rodriguez,* 17 F.3d 1354, 1370 (11th Cir.1994). This right, however, is "not without limitation; [a defendant] is entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Frost,* 61 F.3d 1518, 1525 (11th Cir.1995) (quotations and citations omitted). "A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witnesses and enables defense counsel to establish a record from which he can properly argue why the witness is less than reliable." *Baptista-Rodriguez,* 17 F.3d at 1371. Once a defendant has engaged in sufficient cross-examination to satisfy the Confrontation Clause, further questioning is within the trial court's discretion. *United States v. Diaz,* 26 F.3d 1533, 1539 (11th Cir.1994), *cert. denied,* 513 U.S. 1155, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995).

We hold that the trial court neither violated Mills's rights under the Confrontation Clause of the Sixth Amendment nor abused its discretion in limiting cross-examination of Ashley. During cross-examination of Ashley, Mills's lawyer induced Ashley to admit that: (1) he changed his story of the events surrounding the murder, thereby implicating Mills, after Florida offered him a deal and

deciding that "there was a chance of me getting out and starting a new life"; and (2) the deal that Florida offered Ashley gave him complete immunity from prosecution on the burglary and murder charges in exchange for his testimony against Mills. We hold that this cross-examination exposed Ashley's prior inconsistent statements and bargain with Florida to the extent that the jury could judge his credibility and Mills could argue effectively that Ashley's testimony was not credible.[16] Mills's lawyer engaged in sufficient cross-examination, and the trial judge neither abused his discretion nor violated the Confrontation Clause in limiting the cross-examination to that which the attorney-client privilege did not protect. *See, e.g., United States v. Perez-Tosta,* 36 F.3d 1552, 1563 (11th Cir.1994) (holding that despite district court's restriction on cross-examination of government witness concerning the sentencing benefits he would earn through testifying for the government, it did not violate defendant's confrontation rights because of defense counsel's effective impeachment of the government witnesses' credibility and sentence reduction); *United States v. Taylor,* 17 F.3d 333, 340 (11th Cir.1994) (concluding that the trial court did not violate that defendant's confrontation rights when his lawyer had ample opportunity to raise doubts during cross-examination concerning a government witness's plea agreement); *United States v. Orr,* 825 F.2d 1537, 1540 (11th Cir.1987) (holding that defendant had ample opportunity to cross-examine government witness, including the

---

[16]The Florida Supreme Court on direct review of Mills's claim found that:

> Here the disallowed impeachment was an attempt to bring out a prior inconsistent statement Ashley made to his former counsel's investigator. However, Mills' counsel was able to confront Ashley with several prior inconsistent statements he made to police officers. Defense counsel also cross-examined Ashley about the bargain he made with the authorities whereby Ashley gained immunity not only for the crimes Mills now stands convicted of but also other, unrelated crimes. We therefore hold that the court did not abridge Mills' right to confront the witnesses against him.

*Mills,* 476 So.2d at 176.

terms of a plea agreement, and that further impeachment was "speculative and minimal, at best").

G. Scientific Evidence

Mills contends that the trial court erred in admitting expert testimony and evidence on gunshot residue tests during Florida's rebuttal after ruling that the tests were inadmissible during Florida's case-in-chief. Federal courts generally do not review a state court's admission of evidence in habeas corpus proceedings. *See McCoy v. Newsome,* 953 F.2d 1252, 1265 (11th Cir.), *cert. denied,* 504 U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial. *See Baxter v. Thomas,* 45 F.3d 1501, 1509 (11th Cir.) (stating that we "inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial.") (citations omitted), *cert. denied,* 516 U.S. 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995); *McCoy,* 953 F.2d at 1265. "A denial of fundamental fairness occurs whenever the improper evidence "is material in the sense of a crucial, critical, highly significant factor.' " *Snowden v. Singletary,* 135 F.3d 732, 737 (11th Cir.1998) (quoting *Osborne v. Wainwright,* 720 F.2d 1237, 1238 (11th Cir.1983)), *cert. denied,* --- U.S. ----, 119 S.Ct. 405, --- L.Ed.2d ---- (1998).

We agree with the district court that the admission on rebuttal of the gunshot residue tests was not erroneous and did not affect the fundamental fairness of the trial. On direct review, the Florida Supreme Court held that "[t]he test has attained sufficient standing among scientists to be accepted as reliable evidence in the courts.... A majority of American jurisdictions has held the results of such tests to be admissible evidence in criminal proceedings." *Mills,* 476 So.2d at 176. Additionally, the trial court did not err in admitting the test results and expert testimony as rebuttal evidence. During his direct examination, Mills denied breaking into James Wright's house on May 25, 1979, denied shooting anyone and on cross-examination, denied firing the particular shotgun (or

any gun) on May 24 or May 25, 1979. Thus, the impeachment with the otherwise suppressed gunshot residue tests was proper because Mills's testimony "reasonably suggested" it. *See United States v. Havens,* 446 U.S. 620, 627-28, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) ("[A] defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence ... that is inadmissible on the government's direct case ... as substantive evidence of guilt.").

## V. CONCLUSION

Based on the foregoing, we conclude that the district court did not err in denying Mills's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

AFFIRMED.